# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MARLON PLACIDE,** ) | |
| ) | |
| **Movant,** ) | |
| ) | No. 3:05-0646 |
| v. ) | (Criminal Case Nos. 3:00-00188; |
| **UNITED STATES OF AMERICA,** ) | 3:01-00043) |
| ) | **JUDGE ECHOLS** |
| **Respondent.** ) | |

## MEMORANDUM

Pending before the Court is Marlon Placide's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Docket Entry No. 1), to which the Government has filed an Answer (Docket Entry No. 29), and Placide has filed a "traverse" or reply (Docket Entry No. 31).

## I. PROCEDURAL HISTORY

Placide was tried before a jury in November 2001 in two drug trafficking cases. He was represented by two retained attorneys, Dale M. Quillen and Michael J. Flanagan. The jury found Placide guilty in Case Number 3:00-00188 of conspiracy to possess with intent to distribute over five (5) kilograms of cocaine (Count One). The conspiracy in that case involved more than twenty (20) other named co-conspirators and spanned the period of March 1999 through October 2000. Placide's case was severed and he was tried separately from the other co-conspirators.

In Case Number 3:01-00043, the jury found Placide and his sole co-conspirator, Simone Lowe, guilty of the lesser-included offenses of conspiracy to possess with intent to distribute more than 500 grams of cocaine on March 8, 2001 (Count One), and possession with intent to distribute more than 500 grams of cocaine (Count Three), and of conspiracy to distribute and possess with intent to distribute less than fifty (50) kilograms of marijuana (Count Two), possession with intent

1

to distribute less than fifty (50) kilograms of marijuana (Count Four), and unlawful possession of a firearm in furtherance of a drug trafficking crime (Count Five). The Indictment had charged conspiracy and possession with intent to distribute over five (5) kilograms of cocaine, but at the close of the Government's proof the Government and the two Defendants agreed that the evidence would not support the jury in finding the drug quantity to be over 5 kilograms. The Government and Defendants agreed that the jury should be instructed on the lesser-included offenses of conspiracy to possess with intent to distribute more than 500 grams of cocaine and possession with intent to distribute more than 500 grams of cocaine, and the Court submitted those two counts to the jury as the parties requested. (Case No. 3:00-00188, Trial Tr. at 287-297; Docket Entry No. 723, Verdict Form.)

On May 22, 2002, the Court sentenced Placide in both cases to a total term of 211 months of incarceration. The Sixth Circuit affirmed Placide's convictions and sentence in an unpublished opinion. United States v. Placide, 110 Fed.Appx. 574 (6th Cir. 2004). Co-defendant Lowe, whose convictions and sentence were also affirmed in the same appellate opinion, filed a petition for a writ of certiorari to the United States Supreme Court seeking sentencing relief in light of Blakely v. Washington, 542 U.S. 296 (2004), and in anticipation of United States v. Booker, 543 U.S. 220 (2005). In 2005, after Booker was decided, the Supreme Court granted certiorari and remanded co-Defendant Lowe's case for resentencing. Lowe v. United States, 543 U.S. 1181 (2005). Placide did not file a petition for a writ of certiorari and therefore, his case was not similarly remanded for reconsideration in light of Booker.

Placide filed this § 2255 Motion *pro se* alleging ineffective assistance of counsel at the pretrial, trial, sentencing, and appellate phases of his federal prosecution. Placide was represented at all phases of his defense by the same retained attorneys.

Placide alleges that his counsel rendered ineffective assistance during the pretrial phase of the prosecution by (1) failing to investigate his case; (2) failing to apprize the Court that the two conspiracies charged against him were one and the same offense, thus placing him in double jeopardy; and (3) poorly drafting a Motion to Suppress, failing to perfect a Supplemental Motion to Suppress, and failing to use impeachment evidence and adequately cross-examine witnesses at the suppression hearing. Placide further alleges that his counsel performed deficiently at trial by (1) failing to use available impeachment evidence; (2) failing to apprize the Court of the double jeopardy implications of the two conspiracy charges; (3) failing to object to the Government's request for a lesser-included offense jury instruction, which violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); and (4) failing to submit a Federal Rule of Criminal Procedure 29 motion challenging the lesser-included offense instruction, the two conspiracy charges, and the lack of a special interrogatory to the jury asking it to determine the drug quantity.

As to the sentencing phase of the prosecution, Placide alleges that his counsel failed to file a sentencing memorandum concerning developing case law after <u>Apprendi</u> and failed to assert that the imposition of a sentence on both conspiracy charges constituted a double jeopardy violation. Finally, as to the criminal appeal, Placide claims that his counsel (1) failed to correct inaccuracies in the appellate record; (2) failed to provide the court with evidence that would have shown this Court clearly erred in denying his Motion to Suppress; (3) failed to challenge the Government's request for a lesser-included offense instruction; (4) failed to challenge this Court's fact-finding at

3

sentencing as a Sixth Amendment violation; and (5) failed to file a petition for a writ of certiorari to the Supreme Court seeking remand for resentencing in light of Booker.

With its Answer opposing each claim raised in the § 2255 Motion, the Government supplied the Affidavit of Michael J. Flanagan. Mr. Flanagan attests that he was co-counsel, but Mr. Quillen, who acted as lead counsel, made all decisions concerning Placide's representation. (Docket Entry No. 30, Flanagan Aff. at 1.) Mr. Flanagan recollects that an adequate investigation was done prior to trial and that a full and thorough hearing was held on Placide's Motion to Suppress, which the Court denied. (Id.) Mr. Flanagan offered no response to Placide's allegations in Grounds Two and Three of his Motion in which he alleges ineffective assistance of counsel at trial and at sentencing, stating that those allegations "are directed to lead counsel, Dale Quillen." (Id. at 2.) As to Ground Four, concerning the appeal, Mr. Flanagan asserts that he prepared Placide's appellate brief and presented oral argument in the Sixth Circuit. He states he is not aware of any inaccuracies in the appellate record and he does not recall whether a police dispatch tape was part of the appellate record. He avers that he raised all issues on appeal that were deemed appropriate, and that the decision not to file a petition for a writ of certiorari was made by Mr. Quillen. (Id.) The Government has not provided the affidavit of Mr. Quillen.

The Court will address the common substantive issues raised in Placide's claims and then consider whether any ineffective assistance which regard to that subject occurred at any phase of the prosecution.

## II. STANDARD OF REVIEW

To prevail on a § 2255 motion, the Movant must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see

4

Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993).

To establish ineffective assistance of counsel, Movant must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that they were not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyers' errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Id. A court need not address both parts of the Strickland test if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697.

With regard to the direct appeal, Movant did not have a constitutional right to have every non-frivolous issue raised, see Jones v. Barnes, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). An attorney is not required to present an argument for which there is no good-faith factual support in order to avoid a charge of ineffective representation. Krist v. Foltz, 804 F.2d 944, 946-47 (6th Cir. 1986). In fact, the process of "'winnowing out weaker arguments on appeal'" is "the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986). Generally, the presumption of effective assistance of

counsel is overcome only when the ignored issues are clearly stronger than the ones presented. Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).

Movant is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, "when the trial judge also hears the collateral proceedings, as [is] the case here, that judge may rely on his recollections of the trial in ruling on the collateral attack." Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

**A. Failure to investigate before trial**

*1. Police dispatch tape*

Placide contends that the fundamental error which occurred during his prosecution was that his counsel failed to obtain a copy of Metropolitan Nashville Police Department's dispatch operator tape recording for the morning of March 8, 2001, between the hours of 6:30 a.m. and 9:30 a.m. On that morning, law enforcement officers arrested Placide at his home on a warrant arising from a federal drug trafficking indictment. (Case No. 3:00-00188.) Because a small amount of marijuana and firearms were located at the residence pursuant to a consent search which Placide subsequently revoked, a search warrant was obtained for the residence and vehicles parked at the residence. The parties hotly disputed during Placide's criminal prosecution whether a law enforcement officer removed Placide's business checkbook from one of the parked vehicles at the residence before the search warrant was brought to the residence for execution. Placide contends that the checkbook was unlawfully seized before the search warrant was obtained.

6

Detective Jesse Burchwell found check stubs in the checkbook for rent payments Placide made to Nashboro Village, an apartment complex. When confronted about these check stubs, Placide told Detective Burchwell that he had assisted Simone Lowe in paying the rent on an apartment at the complex. According to Placide, Detective Burchwell then contacted the police dispatcher and learned Simone Lowe's address at Nashboro Village. Further investigation and execution of a search warrant at the Lowe apartment revealed substantial incriminating evidence against Placide and Lowe, including controlled substances, firearms, body armor, cash and other drug paraphernalia. This resulted in the Government bringing a second indictment against Placide and Lowe. (Case No. 3:01-00043.) Placide contends the police dispatcher's tape recording would have shown the precise time of Detective Burchwell's call requesting assistance in obtaining Lowe's address, and this information would have confirmed that Placide's checkbook was unlawfully seized before the search warrant for his residence and vehicles was signed by the state judge.

Placide's counsel filed a Motion to Suppress the evidence found at Placide's home and the Lowe apartment, contending that the checkbook had been unlawfully seized prior to issuance of the first search warrant. At the suppression hearing, the Government presented law enforcement witnesses. Placide's wife, Dionne Placide, testified for the defense that the officers discovered the checkbook prior to the execution of the search warrant at her home because she saw the checkbook on top of the Crown Victoria parked outside the residence before Officer Gene Donegan arrived with a search warrant. Customs Agent David McDance, called as a defense witness, testified he also saw the checkbook for the first time before the search warrant was brought to the scene. Detective Burchwell and FBI Agent Greg Thomason testified, however, that the checkbook was located after the search warrant arrived.

7

Following the suppression hearing, Placide's counsel filed a Supplemental Motion to Suppress and raised additional issues. In a lengthy and thorough opinion which addressed all of the issues Placide raised in both his Motion to Suppress and Supplemental Motion to Suppress, the Court weighed the credibility of the witnesses and found that Detective Burchwell and FBI Agent Thomason were more credible witnesses than Agent McDance and Dionne Placide. The Court denied the suppression motions. On appeal following conviction, the Sixth Circuit affirmed the Court's suppression ruling, noting that the court lacked "any significant basis to say that the district court got it clearly wrong." United States v. Placide, 110 Fed.Appx. 574, 578 (6th Cir. 2004).

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Strickland, 466 U.S. at 691. Strickland directs that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. The Court must make every effort to assess the attorney's performance fairly to eliminate the distorting effects of hindsight, and "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Where there are indications that counsel's conduct may have been strategic, judicial scrutiny must be highly deferential, with a presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.

Placide has not stated under oath or the penalty of perjury, nor has he produced any other evidence, that his attorneys knew about the police dispatcher's tape recording prior to the

8

suppression hearing and intentionally failed to obtain a copy of the tape.[1] Moreover, the record does not show the extent of any discovery the Government produced to counsel in advance of the suppression hearing or whether counsel would have had any reason to know that Detective Burchwell contacted a police dispatcher on the morning of the search.

The factual record does not support Placide's assertion that Detective Burchwell contacted a police dispatcher for assistance. At the suppression hearing, Detective Burchwell did not testify that he contacted a police dispatcher. Rather, he testified repeatedly that he contacted Nashville Electric Service ("NES") to obtain an address for Simone Lowe at Nashboro Village. (Case No. 3:00-00188, Suppression Hr'g Tr. at 69, 83, 88, 90.) Counsel reasonably could have concluded from Detective Burchwell's testimony that he called NES directly. Based on this testimony, counsel would not have been put on notice that a police dispatch tape might exist to confirm the time of Detective Burchwell's call to NES or that such a tape would be in any way helpful in cross-examining Detective Burchwell. Moreover, the tape could not have been used effectively to impeach Detective Burchwell's testimony at trial, as the Court had already ruled that the checkbook was admissible. (Trial Tr. at 142-144, Gov't. Ex. 1.) Thus, the Court determines that counsel acted reasonably and within the wide scope of effective representation in not investigating further to find a police dispatch tape that may have been irrelevant in any event.

Contrary to Placide's contention otherwise, the Motion to Suppress filed on his behalf was not poorly drafted, and counsel filed a Supplemental Motion to Suppress after the hearing seeking

---

[1] The Court granted Placide's motion for discovery, and directed the Government to produce the police dispatch tape for the morning of March 8, 2001. (Docket Entry No. 15.) The Government reported that the tape no longer exists because it was not preserved under the Police Department's records retention policy. (Docket Entry Nos. 16 & 18.)

9

to enforce Placide's constitutional rights. At the suppression hearing, counsel vigorously advocated Placide's position that the checkbook was seized before the search warrant was signed and presented witnesses who so testified. The Court weighed the credibility of the witnesses and found that the Government's witnesses who testified that the checkbook was found after the signing of the search warrant were more credible than those who testified in favor of Placide. The Sixth Circuit ruled that there was no basis to hold that this Court "got it clearly wrong." Placide, 110 Fed. Appx. at 578. Because Placide has not shown that his counsel performed deficiently in failing to obtain the police dispatch tape, he also cannot show any prejudice arising from counsel's allegedly deficient performance. See Strickland, 466 U.S. at 697.

Because there was no error at the pretrial or trial phases, it follows that Mr. Flanagan did not render ineffective assistance by failing to raise the issue of the police dispatch tape on appeal. See Smith, 477 U.S. at 536; Ratliff v. United States, 999 F.2d 1023, 1026 (6th Cir. 1993) (observing appellate attorney performs deficiently if he fails to appeal ruling subject to reversal). Mr. Flanagan did challenge the suppression ruling, and he attempted to bring to the appellate court's attention the conflicting testimony of the witnesses at the suppression hearing. The Sixth Circuit, however, affirmed. This issue is without merit.

### 2. *Sealing of audiotapes containing wiretapped telephone conversations*

Placide next claims that his trial counsel rendered ineffective assistance by failing to investigate whether the Government complied with the statutory requirements for Title III wire interception under 18 U.S.C. § 2518(8)(a). The Court denied Placide's motion for discovery on this issue. (Docket Entry No. 15.) At the trial, FBI Agent Dan Kennedy testified concerning wiretap procedures and the sealing of audiotapes which contain telephone conversations intercepted as a

10

result of the wiretap. He testified that the procedures were followed in this case. (Case No. 3:00-00188, Trial Tr. Vol. 2 at 82-85.) Even assuming Placide's counsel did not make proper inquiry into the sealing of the audiotapes prior to trial, in ruling on this § 2255 Motion, the Court has assured itself that the wiretap sealing procedures were followed in the underlying criminal case. Thus, Placide cannot show any prejudice. See Strickland, 466 U.S. at 687. This issue is without merit.

**B. Conspiracy charges**

Placide contends that his attorneys were ineffective for failing to advocate the position that his indictment on two conspiracy charges violated double jeopardy principles. Count One of the indictment in Case No. 3:00-00188 charged Placide and numerous other co-conspirators with conspiracy to possess with intent to distribute over five (5) kilograms of cocaine between March 1999 and October 2000. Count One of the indictment in Case No. 3:01-00043 charged Placide and his co-conspirator, Simone Lowe, with conspiracy and possession with intent to distribute over five (5) kilograms of cocaine on March 8, 2001.

In United States v. Sinito, 723 F.2d 1250, 1253 (6th Cir. 1983), the Sixth Circuit adopted a totality of circumstances test for determining whether separate conspiracies charged in different indictments are one for the purposes of the Fifth Amendment prohibition against double jeopardy. That test consists of "five elements: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place." United States v. Benton, 852 F.2d 1456, 1462 (6th Cir. 1988) (citing Sinito).

11

"'Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses." Sinito, 723 F.2d at 1256-1257.

The two indictments at issue in this case charged similar drug offenses, but the crimes occurred at different times and involved different co-conspirators and different transactions. Placide's involvement in the longer conspiracy was revealed in part through wiretapped telephone conversations between Placide and his supplier, Stephen Brassel, who was also charged in the conspiracy. The second conspiracy, which occurred on March 8, 2001, concerned only Placide and Lowe and the evidence of illegal drug trafficking found in the apartment at Nashboro Village. The evidence showed that agents did not even become aware of Lowe's apartment and link Placide to it until Placide's checkbook was found the morning of his arrest on the warrant resulting from the first indictment. Because several of these factors differ between the conspiracies, it follows that the alleged conspiracies are separate and distinct offenses and double jeopardy principles were not violated. See Benton, 852 F.2d at 1462; Sinito, 723 F.2d at 1256-1257. Placide's counsel did not render ineffective assistance by failing to raise this issue at the pretrial, trial, and sentencing phases.

**C. Lesser-included offense instruction**

Placide argues that his counsel should have objected at trial when the Government requested a lesser-included offense instruction relating to the March 8, 2001 conspiracy charged in Case No. 01-00043. In ruling on Placide's Rule 29 motion at the close of the Government's proof, the Court agreed with the defense that the Government had not proved Placide's conspiracy with Lowe involved more than five kilograms of cocaine. After presenting arguments to the Court on the application of the then-recent case of Apprendi, Government counsel and Placide's counsel joined in asking the Court to instruct the jury on the lesser-included offenses of conspiracy to possess with

12

intent to distribute more than 500 grams of cocaine (Count One), and possession with intent to distribute more than 500 grams of cocaine (Count Three). (Trial Tr. at 287-289.) This required the jury to find beyond a reasonable doubt the minimum drug quantity supported by the evidence that would affect Placide's sentencing. There was no need to submit an additional special interrogatory to the jury, as Placide contends. Because Placide's own counsel asked the Court at trial to instruct the jury on the lesser included offense and because it was reasonable for the Court to do so under Sixth Circuit law as it existed at that time after Apprendi, see United States v. Flowal, 234 F.3d 932, 936 (6th Cir. 2000), Placide may not now complain that his counsel rendered deficient performance by failing to object. This issue is without merit.

## D. Rule 29 Motion

Placide contends that a Sixth Amendment violation occurred because his counsel did not move for judgment of acquittal under Federal Rule of Criminal Procedure 29 challenging the lesser-included offense instruction on drug quantity, the lack of a special interrogatory to the jury on drug quantity, and the double jeopardy implications of two conspiracy charges. Because the Court has shown above that each of these individual claims lacked merit, it follows that Placide's attorneys were not ineffective for failing to make a Rule 29 motion asserting these claims.

## E. Sentencing and Appeal

Finally, with regard to his sentencing, Placide claims that his attorneys rendered ineffective assistance because they did not file a sentencing memorandum discussing the application of Apprendi to his case. Moreover, on appeal he claims that his counsel should have challenged this Court's findings of fact made at sentencing concerning the applicable drug quantity and they should have filed a petition for a writ of certiorari to the Supreme Court in anticipation of Booker. While

13

Placide's lawyers might have done more to argue <u>Apprendi</u> issues at sentencing, any failure on their part did not matter in the end. Guided by the jury's verdict, this Court found the drug quantity as fact at sentencing, and the Sixth Circuit upheld the sentence on direct appeal, holding that this Court's fact-finding was appropriate under <u>United States v. Koch</u>, 383 F.3d 436 (6th Cir. 2004). Thus, these aspects of Placide's ineffective assistance claim regarding his sentencing are without merit.

Long after the case was over, however, Mr. Quillen sent Placide a letter which stated in part:

> It appears that the Supreme Court decision dealing with the sentencing guideline laws is not going to be of any benefit to those whose cases were closed at the time the decision was announced. Although at the time, an application to appeal to the United States Supreme Court would have been expensive and promised no possibility whatsoever of being granted, it now appears if we had kept the case alive you would have been in a position now to challenge your sentence.

(Docket Entry No. 32, Appendix at 2.) Mr. Quillen urged Placide to file a § 2255 Motion alleging Mr. Quillen's ineffective assistance of counsel for failure to file a petition for a writ of certiorari, and Placide did so.

The Government correctly notes, however, that Placide did not have a constitutional right to pursue a petition for a writ of certiorari, <u>Wainwright v. Torna</u>, 455 U.S. 586, 587 (1982); <u>Ross v. Moffitt</u>, 417 U.S. 600, 617 (1974), and where no constitutional right to act exists there can be no ineffective assistance in failing to pursue the right. Thus, even assuming from the above-quoted letter that Placide asked Mr. Quillen to file a petition for a writ of certiorari and Mr. Quillen failed to do so, Placide does not have any constitutional remedy that he may pursue in this § 2255 Motion.[2]

---

[2] The Court notes that criminal defendants for whom attorneys are appointed under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, have a <u>statutory</u> right to the assistance of appointed counsel in filing a petition for a writ of certiorari. <u>See</u> Plan of the United States Court of Appeals for the Sixth Circuit to Supplement the Plans of Those Adopted by the Several District

14

See United States v. Garcia-Meza, 2006 WL 3091459 at **3-4 (W.D. Mich. Oct. 30, 2006).

Consequently, Placide is not entitled to relief on this claim.

### IV. CONCLUSION

For all of the reasons stated, Placide's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docket Entry No. 1) will be DENIED.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

---

Courts Within the Circuit, as Required by the Criminal Justice Act of 1964, 18 U.S.C. § 3006A, as Amended at ¶ III(5). The Sixth Circuit deemed such a provision appropriate if counsel is appointed because a "defendant with retained counsel who loses his appeal to the Court of Appeals can insist that his attorney prepare and file a petition for writ of certiorari." Self v. United States, 574 F.2d 363, 366 (6th Cir. 1978).